**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Case No. 26-cv-01581-NYW

MEDER ALYMKULOV,

      Petitioner,

v.

MARKWAYNE MULLIN, in his official capacity,
TODD BLANCHE, in his official capacity,
JUAN BALTASAR, in his official capacity,
MARY DEANDA-YBARRA, in her official capacity, and
TODD LYONS, in his official capacity,

      Respondents.

_____

**MEMORANDUM OPINION AND ORDER**
_____

This matter is before the Court on the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), [Doc. 1], and the Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for TRO"), [Doc. 13]. Respondents filed a consolidated response in opposition, [Doc. 15], and Petitioner has replied, [Doc. 16]. For the reasons set forth below, the Petition is **GRANTED in part**.

**BACKGROUND**

Petitioner Meder Alymkulov ("Petitioner" or "Mr. Alymkulov") is a citizen of Kyrgyzstan. [Doc. 1 at ¶ 2]. In April 2022, he presented himself at the border for inspection. [*Id.* at ¶ 21]. The Department of Homeland Security ("DHS") paroled Mr. Alymkulov into the country for one year, pursuant to 8 U.S.C. § 1182(d)(5). [*Id.*]; *see also* [*id.* at 20 (Petitioner's I-94 admission form)]. He applied for asylum and withholding of

removal in July 2022, and his application remains pending. [*Id.* at ¶ 24]. He also obtained work authorization and eventually began working as a truck driver. [*Id.* at ¶¶ 4–5]. On March 12, 2026, Mr. Alymkulov was arrested by DHS. [*Id.* at ¶ 25]. Upon his arrest, DHS provided no "arrest documents, notices, or paperwork" or any other "explanation of the basis for his custody." [*Id.*]. DHS later issued him a Notice to Appear for removal proceedings. [*Id.* at 22–23].

Mr. Alymkulov remains in detention at ICE's Denver Contract Detention Facility in this District. [*Id.* at ¶ 25]. He has had no opportunity to challenge his confinement, and he says DHS has not specified whether he is detained under 8 U.S.C. § 1226(a), 8 U.S.C. § 1225(b), or some other statute. [*Id.* at ¶¶ 6, 8]. In their response brief, Respondents assert that 8 U.S.C. § 1225(b) requires Mr. Alymkulov's detention. *See* [Doc. 15 at 3]. Petitioner disputes Respondents' interpretation of § 1225(b)(2)(A) and contends that he is actually detained under 8 U.S.C. § 1226(a), which would entitle him to a bond hearing. [Doc. 1 at ¶¶ 30–33].

Mr. Alymkulov asserts four claims challenging his detention. First, he argues that his detention without an individualized custody determination violates § 1226(a) itself ("Count One"). [*Id.* at ¶¶ 30–33]. Second, he argues that, insofar as his detention is based on the termination of his parole, ICE gave him inadequate notice and no opportunity to challenge his detention or the termination of his parole ("Count Two"). [*Id.* at ¶¶ 34–36]. Third, he contends that his detention without a bond hearing violates his due process rights under the Fifth Amendment ("Count Three"). [*Id.* at ¶ 37]. Fourth, and relatedly, he asserts that DHS's failure to provide an individualized custody hearing violates his procedural due process rights ("Count Four"). [*Id.* at ¶¶ 38–41].

Mr. Alymkulov seeks, among other things, a writ of habeas corpus ordering that he either be released from custody or granted a bond hearing.  [*Id.* at 12–13].  If the Court orders a bond hearing, he asks that the Government bear the burden of justifying detention.  [*Id.* at 12].  The Motion for TRO requests substantially the same relief.  *See* [Doc. 13 at 8].

This matter is fully briefed and ripe for disposition.  No Party has requested an evidentiary hearing or oral argument, and the Court finds that no hearing is necessary. *Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) (declining to hold a hearing where the petitioner's habeas challenge was "fundamentally legal in nature").

## LEGAL STANDARD

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## ANALYSIS

Petitioner's claims primarily turn on whether Respondents may detain him pursuant to § 1225(b)(2)(A), such that he is not entitled to a bond hearing under § 1226(a). The Court summarizes the statutory framework before turning to the Parties' arguments.

3

## I.      Statutory Framework

Sections 1225 and 1226 govern detention of noncitizens prior to a final order of removal.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Section 1226 "sets forth 'the default rule' for detaining noncitizens 'already present in the United States.'"  *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382-MSN-WEF, 2025 WL 2783800, at *5 (E.D. Va. Sept. 30, 2025) (quoting *Jennings*, 583 U.S. at 303).  This section permits, but does not require, the Attorney General to detain noncitizens pending removal proceedings, subject to certain exceptions not applicable here.  *Jennings*, 583 U.S. at 303; 8 U.S.C. § 1226(a)(1)–(2) (the Attorney General "*may* continue to detain" or "*may* release" the noncitizen (emphasis added)).  Section 1226(a) thus establishes a discretionary framework for the detention of noncitizens pending removal proceedings.

Section 1225(b) "supplement[s] § 1226's detention scheme."  *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1246 (W.D. Wash. 2025) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022)).  Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States," i.e., "applicants for admission."  *Jennings*, 583 U.S. at 297.  This section provides, in relevant part, that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained" pending removal proceedings.   8 U.S.C. § 1225(b)(2)(A) (emphasis added).[1]   Under § 1225(a)(1), an "applicant for admission" is

---

[1] Under 8 U.S.C. § 1225(b)(1), "certain applicants for admission who are deemed inadmissible are subject to expedited removal, unless they express a fear of persecution or an intent to apply for asylum."  *Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297, 304 (D. Mass. Oct. 3, 2025), *appeal docketed*, No. 25-2152 (1st Cir. Dec. 3, 2025); *see also* 8 U.S.C. § 1225(b)(1)(A)(i) (directing an immigration officer to "order [a person deemed

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters).

Absent an exception for urgent humanitarian reasons not implicated in this case, "detention under § 1225(b)(2) is considered mandatory," and "[i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (citing *Jennings*, 583 U.S. at 297).

## II. Application to Statutory Claim

The Court's analysis begins with Count One, the statutory claim. Respondents argue that § 1225(b)(2)(A) applies and requires Petitioner's detention, so he is not entitled to a bond hearing. *See* [Doc. 15]. This Court, following the clear weight of persuasive authority, has already rejected Respondents' position. *See Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *5 (D. Colo. Oct. 22, 2025) ("[F]ederal courts have overwhelmingly rejected Respondents' 'broad interpretation of section 1225(b)(2).'" (collecting cases)).[2] In *Loa Caballero*, this Court reviewed a similar habeas

---

inadmissible] removed from the United States without further hearing or review unless [the person] indicates either an intention to apply for asylum . . . or a fear of persecution"). Respondents do not argue that Petitioner is detained pursuant to § 1225(b)(1), *see* [Doc. 11], so the Court does not substantively address detention under this subsection.

[2] In addition to this Court's ruling in *Loa Caballero*, nearly all of the other judges in this District have concluded that § 1225(b)(2)(A) does not apply to noncitizens similarly situated to Petitioner, who have been present in the country for some time and are not actively "seeking admission." *See, e.g.*, *Mendoza Gutierrez v. Baltasar*, No. 25-cv-02720-RMR, 2025 WL 2962908 (D. Colo. Oct. 17, 2024) (Rodriguez, J.), *appeal docketed*, No. 25-1460 (10th Cir. Dec. 16, 2025); *Moya Pineda v. Baltasar*, No. 25-cv-02955-GPG, 2025 WL 3516291 (D. Colo. Oct. 20, 2025) (Gallagher, J.); *Nava Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025) (Sweeney, J.); *Arredondo v. Baltazar*, No. 25-cv-03040-RBJ, 2025 WL 4083607 (D. Colo. Oct. 31, 2025) (Jackson, J.); *Florez Marin v. Baltazar*, No. 25-cv-03697-PAB, 2025 WL 3677019 (D. Colo. Dec. 18, 2025) (Brimmer, J.); *Aleman Hernandez v. Baltazar*, No. 25-cv-03688-SKC-SBP, 2025 WL 3718159 (D. Colo. Dec. 23, 2025) (Crews, J.); *Garcia Abanil v. Baltazar*, --- F. Supp.

petition filed by a noncitizen who was detained without a bond hearing based on the Government's assertion that § 1225 mandated his detention. *See id.* at *1. The Court disagreed, emphasizing that § 1225(b)(2)(A) only provides for mandatory detention of noncitizens "seeking admission" to the country. *Id.* at *6. "The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States." *Id.* Thus, noncitizens who are merely "present"—and have been for years without obtaining legal status—are not "seeking admission" under § 1225(b)(2)(A). *Id.* (quoting *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025)). Interpreting § 1225(b)(2)(A) to mandate detention for all "applicants for admission" would render the "seeking admission" language superfluous. *Id.* at *7. The Court concluded that both the plain text of § 1225 and applicable canons of statutory interpretation demonstrated that the petitioner in *Loa Caballero* was detained under § 1226, not § 1225. *See id.* at *5–8. The Court has since reaffirmed its ruling in *Loa Caballero* in several other similar habeas cases. *See, e.g.*, *Briales-Zuniga v. Baltazar*, No. 25-cv-03439-NYW, 2026 WL 35227 (D. Colo. Jan. 6, 2026); *Garcia Bautista v. Noem*, No. 26-cv-00272-NYW, 2026 WL 532427, at *4 (D. Colo. Feb. 26, 2026).

Respondents acknowledge the issue presented in this case "is not materially different" than *Loa Cabellero*, *see* [Doc. 15 at 2], and provide no persuasive reason for the Court to depart from the conclusion it reached in that case. Nor has the Tenth Circuit yet addressed the issue.[3] And although Respondents preserve their arguments to the

---

3d ----, 2026 WL 100587 (D. Colo. Jan. 14, 2026) (Martinez, J.). *But see Singh v. Blanche*, No. 26-cv-00421-DDD-KAS (D. Colo. Apr. 15, 2026), ECF No. 12 (Domenico, C.J.).

[3] The courts of appeals to consider Respondents' interpretation of § 1225(b)(2)(A) have split. *Compare Cunha v. Freden*, --- F.4th ----, 2026 WL 1146044 (2d Cir. Apr. 28, 2026) (rejecting Respondents' interpretation), *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*,

contrary, they concede that the Court's ruling in *Loa Caballero* will lead the Court to the same conclusion here.

Accordingly, as in *Loa Caballero* and *Briales-Zuniga*, the Court concludes that § 1225(b)(2)(A) does not authorize Respondents' detention of Petitioner. The "default rule" of discretionary detention under § 1226(a) therefore applies. *See, e.g.*, *Quispe-Ardiles*, 2025 WL 2783800, at *5, *7. And because Respondents have failed to provide Petitioner with a bond hearing or any other individualized custody determination, his continued detention violates § 1226(a). The Petition is **GRANTED** as to Count One.

### III.    Appropriate Remedy

In the Petition, Mr. Alymkulov requests that this Court order him immediately released. [Doc. 1 at 12]. But § 1226(a) "does not require release—it provides DHS the discretion to grant an alien release on bond." *Nava Hernandez*, 2025 WL 2996643, at *8. This Court—again following the clear weight of persuasive authority—has held that a bond hearing before an immigration judge vindicates the procedural protections afforded by § 1226(a). *See, e.g., Loa Caballero*, 2025 WL 2977650, at *9; *Briales-Zuniga*, 2026 WL 35227, at *4. Thus, the Court will order Respondents to provide Petitioner with a bond hearing before an immigration judge, who "is better suited to consider whether Petitioner

---

--- F.4th ----, 2026 WL 1243395 (11th Cir. May 6, 2026) (same), *and Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025) (concluding at preliminary stage that DHS was unlikely to succeed on the merits of its argument), *with Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026) (affirming Respondents' interpretation), *and Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) (same). Given that the arguments on both sides are now well-worn, the Court need not go further than to note that the Fifth and Eighth Circuits' decisions, although thorough, do not bind or persuade this Court to reconsider its analysis of this issue. *See Garcia Bautista*, 2026 WL 532427, at *3 n.3.

poses a flight risk and a danger to the community." *Loa Caballero*, 2025 WL 2977650, at *9.

Mr. Alymkulov also asks that the Government bear the burden of proof at the bond hearing. He provides no explanation or support for this request. *See* [Doc. 1; Doc. 13; Doc. 16]. In their response, however, Respondents do not address the issue or even indicate that they oppose the request. *See* [Doc. 15]. The Court has previously considered this issue in the absence of substantive briefing and will do the same here. *See Diaz Lopez v. Noem*, No. 25-cv-04089-NYW, 2026 WL 206220, at *5 (D. Colo. Jan. 27, 2025). And as in previous cases, the Court concurs with other cases in this District that have required the Government to bear the burden of proof at a § 1226(a) bond hearing where, as here, the petitioner is initially erroneously detained under § 1225. *See Martinez Escobar v. Baltazar*, No. 26-cv-00296-NYW, 2026 WL 503313, at *5 (D. Colo. Feb. 24, 2026); *see also, e.g.*, *Garcia Abanil*, 2026 WL 100587, at *8 ("[T]he weight of authority in this District is clear: it is the Government's burden to justify a noncitizen's continued detention at a bond hearing." (cleaned up) (collecting cases)). *But see De La Cruz v. Baltazar*, No. 26-cv-00360-PAB, 2026 WL 439217, at *4 (D. Colo. Feb. 17, 2026) (declining to shift burden to the Government in a similar case). The Court also concurs with the decisions concluding that "the clear and convincing standard that generally applies to civil detention where liberty is at stake is appropriate here as well." *Arredondo v. Baltazar*, No. 25-cv-03040-RBJ, 2025 WL 4083607, at *4 (D. Colo. Oct. 31, 2025) (quotation omitted); *see also Martinez Escobar*, 2026 WL 503313, at *5 (collecting cases).

Finally, Petitioner asks that the Court issue injunctive relief prohibiting Respondents from re-detaining him and requiring Respondents to return his documents

and other personal items to him.  [Doc. 1 at 13; Doc. 13 at 8].  The Court finds that Petitioner has not "clearly established" that the requested injunctive relief is necessary at this time.  *See De La Cruz*, 2026 WL 439217, at *5 (citing *Goldammer v. Fay*, 326 F.2d 268, 270 (10th Cir. 1964) ("Injunction is a drastic remedy to be exercised with caution, and should be granted only in cases where the necessity therefore is clearly established.")).  Consistent with its usual practice, however, the Court will order the Parties to submit a Joint Status Report after the bond hearing, apprising the Court of the status of the matter—including but not limited to whether Respondents have returned Petitioner's documents and other personal items—to allow the Court to determine whether any further proceedings are necessary.[4]

Accordingly, Respondents are **ORDERED** to provide Petitioner a bond hearing no later than **May 18, 2026**.  At the bond hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is justified.  **If Respondents to not do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, he must be immediately released from detention.**  On or before **May 26, 2026**, the Parties shall file a joint status report concerning (1) the results of any bond hearing that was conducted or, if no hearing was held, advise the Court of the date Petitioner was released from custody; (2) if Petitioner was released, whether his documents and other confiscated personal items were returned to him; and (3) whether any additional proceedings in this matter are required.

---

[4] Petitioner also asks the Court to award him attorney's fees under the Equal Access to Justice Act.  [Doc. 1 at 13].  However, this District's Local Rules require that those requests be made by separate motion.  *See* D.C.COLO.LCivR 54.3.

## IV.    Remaining Claims

Respondents suggest that the Court need not address any claims other than Count One, because Petitioner seeks the same relief—a bond hearing or other individualized custody determination—on all four of his claims.  [Doc. 15 at 2 n.2].  Petitioner does not address or dispute this point in his reply brief.  *See* [Doc. 16].  In fact, he seems to confirm Respondents' position by spending several pages arguing why due process entitles him to a bond hearing.  [*Id.* at 13–18].  And he does not address Count Two, his parole claim, at all.  *See generally* [*id.* at 3–18].  In any event, the Court concurs with Respondents that a hearing will provide Petitioner his desired opportunity to challenge DHS's decision to detain him rather than release him on bond or parole.  *See* [Doc. 1 at ¶ 36].  Because the Court grants Petitioner this relief through his statutory claim, the Court need not decide whether he is entitled to a hearing under the Due Process Clause or applicable parole regulations.   *See, e.g.*, *Briales-Zuniga*, 2026 WL 35227, at *4 (declining to reach constitutional or regulatory claims after granting requested relief on § 1226(a) claim).  And because the Motion for TRO seeks substantially the same relief as what the Court has already granted, *see* [Doc. 13 at 8], the Motion for TRO is respectfully **DENIED as moot**, *see Loa Caballero*, 2025 WL 2977650, at *9 (denying motion for temporary restraining order as moot after granting petitioner "identical" relief on the merits).

### CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)    The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1] is **GRANTED in part** as to Count One;

(2)    The Emergency Motion for Temporary Restraining Order and Preliminary

Injunction [Doc. 13] is **DENIED as moot**;

(3)     Respondents shall provide Petitioner a bond hearing no later than **May 18, 2026**.  At the bond hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is justified.  **If Respondents to not do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention**; and

(4)     On or before **May 26, 2026**, the Parties shall file a joint status report concerning (1) the results of any bond hearing that was conducted or, if no hearing was held, advise the Court of the date Petitioner was released from custody; (2) if Petitioner was released, whether his documents and other confiscated personal items were returned to him; and (3) whether any additional proceedings in this matter are required.

DATED:  May 11, 2026                                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge